UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KEVIN DAWSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 11 C 7300 |
| v. | ) | |
| | ) | |
| THOMAS DART, in his official capacity | ) | Judge Thomas M. Durkin |
| as the Sheriff of Cook County, Illinois, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION & ORDER**

Plaintiff Kevin Dawson filed this wrongful detention lawsuit against defendant Thomas Dart in his official capacity as the Sheriff of Cook County and four Chicago Police Officer defendants in their personal capacities. The Chicago Police Officer defendants have since settled with Dawson, leaving only Dart as a defendant. Currently before the Court are: (1) Dart's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) (R. 113); and (2) Dawson's *pro se* motion opposing Dart's motion to dismiss (R. 117). For the following reasons, the Court grants Dart's motion and denies Dawson's motion.

**Standard**

A Rule 12(b)(6) motion challenges the sufficiency of the complaint. *E.g., Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The statement must give defendant "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 555 (2007). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Mann v. Vogel*, 707 F.3d 872, 877 (7th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). In applying this standard, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *Mann*, 707 F.3d at 877.

**Background**

Dawson was charged with residential burglary on March 21, 2010. R. 38 ¶ 9. The Circuit Court of Cook County, Criminal Division, in Skokie released Dawson on bond with electronic monitoring. *Id.* On May 6, 2010, the court modified Dawson's terms of release to allow him to leave his house for work. *Id.* ¶ 10.

On August 25, 2010, two men robbed Dawson while he was on his way to work, and one of them shot Dawson in the back. *Id.* ¶ 11. Paramedics took Dawson to the hospital, where he was treated for severe spinal injuries. *Id.* Chicago Police Officers B.A. Crisler and J.G. Burks allegedly falsely reported that paramedics on the scene found a handgun in Dawson's possession. *Id.* ¶ 13.

2

Two Cook County Sheriffs visited Dawson's hospital room on September 4, 2010, and told him that he was under arrest and would be charged with unlawful use of a weapon based on Crisler and Burks's allegedly false report. *Id.* ¶ 14. Dawson then was taken to Cook County Jail. *Id.* Three days later, on September 7, 2010, Dawson was transferred from Cook County Jail to Stroger Hospital due to his injuries. *Id.* ¶ 15. He was kept shackled while at Stroger. *Id.*

On September 12, 2010, Chicago Police Officers Ambrose Resa and James Braun visited Dawson at Stroger. *Id.* ¶ 16. They allegedly told Dawson that they were attempting to find out who shot him, when in fact they were investigating the February 28, 2010 murder of a man named Willie Anderson. *Id.*

On September 14, 2010 at a hearing before the Skokie court, an Assistant States Attorney advised the court that Dawson would be charged with unlawful use of a weapon based on the gun falsely claimed to have been found in Dawson's possession when Dawson was shot. *Id.* ¶¶ 16-17. At that hearing, the Skokie court denied Dawson's counsel's motion to modify the conditions of his bond so that he would not need to be handcuffed during his recovery from his gunshot wound. *See* R. 113-1 at 10, 14 (*People of the State of Illinois v. Kevin Dawson*, No. 10 C2 20321 (Cir. Ct. Cook Cnty., Sept. 14, 2010)).[1]

Dawson has never been charged with unlawful use of a weapon. R. 38 ¶ 20. Dawson was, however, charged on October 1, 2010 with the February 28 murder of

---

[1] Courts may take judicial notice of public court documents like this one without converting a Rule 12(b)(6) motion to dismiss into a motion for summary judgment. *E.g.*, *PharMerica Chicago, Inc. v. Meisels*, 772 F. Supp. 2d 938, 947 (N.D. Ill. 2011).

3

Willie Anderson. *Id.* ¶ 22. Dawson alleges that he did not have the opportunity to post bond on the murder charge because he had already been taken into custody by Dart. *Id.* ¶ 23. Dawson has continued to be held in custody since September 4, 2010. *Id.* ¶ 26.

Dawson's operative, fifth amended complaint (R. 38) was filed on December 26, 2012 by Dawson's former attorneys. Count I of the complaint is a damages claim against the former Chicago Police Officer defendants for violating Dawson's constitutional rights through unreasonable seizure and false statements. *See id.* ¶¶ 1-30; *see also id.* pp. 5-6 ("Wherefore" clause seeking "actual damages" against the former Chicago Police Officer defendants only). Count II is titled "Petition for Writ of Habeas Corpus." *Id.* at p. 5. It alleges that "Dart, in his official capacity as the Sheriff of Cook County, is holding and detaining Dawson in the Cook County Jail" in violation of Dawson's due process rights under the Fourteenth Amendment and the Fourth Amendment's protection against unreasonable seizures. *Id.* ¶ 33.

The only request for relief against Dart in the "Wherefore" clause of Dawson's complaint is "an injunction requiring the release of Dawson upon posting bond for his murder charge, and . . . costs, attorneys' fees, and such further relief as the Court deems appropriate." *Id.* at pp. 5-6. Dawson similarly states in his allegations in support of Count II that "the Court has the authority to require that Dart cease holding Dawson in violation of his Constitutional rights." *Id.* ¶ 34. Importantly, however, Dawson is no longer in Dart's custody; he has been transferred to Pickneyville Correctional Center.

## Discussion

### I. Quasi-Judicial Immunity

Dart's motion to dismiss first argues that Dawson's claim against him is barred by quasi-judicial immunity. Dart relies on Seventh Circuit case law including *Henry v. Farmer City State Bank*, 808 F.2d 1228 (7th Cir. 1986), which held that "police officers, sheriffs, and other court officers who act in reliance on a facially valid court order are entitled to quasi-judicial immunity from suit under § 1983 for damages." *Id.* at 1239. Dart says that he acted in reliance on the bond and electronic monitoring conditions set by a valid court order when taking Dawson into custody beginning on September 4, 2010.

Dart's quasi-judicial immunity argument fails at the outset because Dawson's complaint names Dart only in his official capacity. *See* R. 38 at 1 (caption and first line of complaint naming "THOMAS DART, in his official capacity as the Sheriff of Cook County, Illinois"); *id.* ¶ 32 (Count II naming Dart "in his official capacity as the Sheriff of Cook County"). And the Seventh Circuit has held that quasi-judicial immunity does not apply to a suit against a sheriff in his official—as opposed to personal—capacity. *Hernandez v. Sheahan*, 455 F.3d 772, 776 (7th Cir. 2006). As the *Hernandez* court explained:

> Official immunities (judicial, legislative, absolute, qualified, quasi, and so on) are personal defenses designed to protect the finances of public officials whose salaries do not compensate them for the risks of liability under vague and hard-to-foresee constitutional doctrines. That

> justification does not apply to suits against units of state or local government,[2] which can tap the public fisc.

*Id*. The Seventh Circuit in *Hernandez* therefore held that the Sheriff of Cook County in his official capacity could not invoke quasi-judicial immunity to argue that he was "just carrying out the judge's orders." *Id.*; *accord Capra v. Cook Cty. Bd. of Review*, 733 F.3d 705, 711 (7th Cir. 2013) (reaffirming holding in *Hernandez*); *Satkar Hosp. Inc. v. Cook Cty. Bd. of Review*, 2012 WL 3151376, at *3 (N.D. Ill. Aug. 2, 2012) (citing *Hernandez* for same). Like in these cases, Dart's quasi-judicial immunity argument fails because Dawson has sued Dart only in his official capacity.

## II. Mootness of Request for Injunctive Relief

Dart further argues that Dawson's injunctive relief request is moot. As explained above, the only relief Dawson requests "[a]gainst defendant Dart" in the "Wherefore" clause of the complaint is "an injunction requiring the release of Dawson upon posting bond for his murder charge, and for his costs, attorneys' fees, and such further relief as the Court deems appropriate." R. 38 at pp. 5-6. Count II of the complaint similarly states that "this Court has the authority to require that Dart cease holding Dawson in violation of his Constitutional rights." *Id.* ¶ 34.

As the Seventh Circuit held in *Higgason v. Farley*, 83 F.3d 807 (7th Cir. 1995), "[i]f a prisoner is transferred to another prison, his request for injunctive relief against officials of the first prison is moot unless he can demonstrate that he

---

[2] It is well-established that "[a]n official capacity suit is tantamount to a claim against the governmental entity itself." *Guzman v. Sheahan,* 495 F.3d 852, 859 (7th Cir. 2007).

is likely to be retransferred. Allegations of a likely retransfer may not be based on mere speculation." *Id.* at 811; *accord Santiago v. Walls*, 196 F. App'x 416, 417 (7th Cir. 2006) (same); *Stubblefield v. Beck*, 2015 WL 8536743, at *1 (N.D. Ill. Dec. 10, 2015) (same). Dawson has been transferred to Pickneyville Correctional Center, and he gives no indication that he is likely to return to Dart's custody. Accordingly, Dart is correct that Dawson's request for injunctive relief against Dart—*i.e.*, Dawson's only request for substantive relief against Dart in the complaint as currently pleaded—is moot.

## III. Failure to Plead a *Monell* Claim

Finally, and in the alternative, Dart argues that Dawson has failed to plead a *Monell* claim. Pursuant to *Monell,* Dart may be held liable in his official capacity only if an official policy or custom caused the alleged constitutional violation. "[A] plaintiff may demonstrate the existence of an [official] policy or custom in one of three ways: [1] proof of an express policy causing the loss, [2] a widespread practice constituting custom or usage that caused the loss, or [3] causation of the loss by a person with final policymaking authority." *Kujawski v. Bd. of Comm'rs of Bartholomew Cnty. Ind.*, 183 F.3d 734, 737 (7th Cir. 1999); *accord Guzman*, 495 F.3d at 859.

Here, Dawson alleges neither an express policy nor a widespread practice causing his alleged constitutional deprivation for purposes of the first two categories of *Monell* claims. "To fit within the third category of *Monell* claims, the employee must be responsible for establishing final government policy in a particular area or

7

on a particular issue." *Klingler v. City of Chicago*, 2017 WL 3394722, at *1 (N.D. Ill. Aug. 8, 2017). "[A] sheriff in Illinois has final policy-making authority" as a general matter. *Brokaw v. Mercer Cnty.*, 235 F.3d 1000, 1013 (7th Cir. 2000). But Dart maintains that the state court in Dawson's underlying criminal case—not Dart— had final policymaking authority regarding the "particular area or . . . particular issue" (*Klinger*, 2017 WL 3394722, at *1) of setting the conditions of Dawson's release on bond, including conditions of electronic monitoring.

The Court agrees with Dart. Dawson challenges the alleged wrongful detention of Dawson by Dart beginning on September 4, 2010. And, as described by Dawson's own counsel at the September 14, 2010 hearing before the Skokie court, the reason Dawson was taken into custody on September 4, 2010 is because the electronic monitoring conditions set by the court were not met when Dawson was at the hospital.[3] Dawson's complaint does not allege any facts plausibly controverting these representations. The facts as currently pleaded and as described by Dawson's counsel in 2010 thus support that the Skokie court—not the Sheriff—had final policymaking authority with respect to the challenged aspects of Dawson's detention. As such, Dawson has failed to plead a *Monell* claim against Dart.

---

[3] *See* R. 113-1 at 4 (Dawson's counsel representing: "[T]he sheriffs informed me that [Dawson] was only taken into custody because the conditions of [electronic monitoring] require him to be at his house so the box that's connected to the phone or works through the land line can pick up the signal. They said they simply couldn't do that in the hospital nor would they."); *id.* at 10 (Dawson's counsel asking for a change in the previously set "conditions of the electronic monitoring" so Dawson did not need to be handcuffed during his recovery); *id.* at 14 (court denying "motion to modify conditions of bond").

## Conclusion

For these reasons, the Court: (1) grants Dart's motion to dismiss without prejudice (R. 113); and (2) denies Dawson's motion in opposition (R. 117). If Dawson believes he can cure the deficiencies identified in this opinion in his claim against Dart, he may file a motion for leave to file an amended complaint on or before June 1, 2018. The motion should attach a redlined comparison between the current complaint and the proposed amended complaint, and it should be supported by a brief of no more than five pages describing how the proposed amended complaint cures the deficiencies in the current complaint. Should Dawson choose to file such a motion, Dart should not respond unless ordered to do so by the Court.

ENTERED:

*Thomas M. Durkin*
Honorable Thomas M. Durkin
United States District Judge

Dated: May 16, 2018